# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

| | | |
|---|---|---|
| DANA M. MITCHELL, | * | |
| Plaintiff, | * | |
| v. | * | CV 513-121 |
| CITY OF NAHUNTA and RONNIE JACOBS, | * | |
| Defendants. | * | |

## ORDER

This matter comes before the Court on several fully-briefed motions: a Motion to Dismiss filed by Defendant Ronnie Jacobs ("Jacobs") (dkt. no. 33); a Motion for Summary Judgment by Defendant the City of Nahunta and Jacobs (collectively, "Defendants") (dkt. no. 29); and a Motion to Strike and Motion for Default Judgment by Plaintiff Dana M. Mitchell ("Plaintiff") (dkt. no. 35). For the reasons that follow, Jacobs' Motion to Dismiss (dkt. no. 33) is **GRANTED in part** and **DENIED in part**: the Motion is **GRANTED** to the extent that it seeks a dismissal of Plaintiff's federal claims against Jacobs in his individual capacity, and it is **DENIED** insofar as it requests the dismissal of these claims against him in his official capacity and any state-law claim against him.

Defendants' Motion for Summary Judgment (dkt. no. 29) is also **GRANTED in part** and **DENIED in part** as follows: it is **GRANTED** as to Plaintiff's claims for discrimination on the basis of a disability and punitive damages, and it is **DENIED** as to Plaintiff's race discrimination and retaliation claims. Finally, Plaintiff's Motion to Strike and Motion for Default Judgment (dkt. no. 35) is **DENIED** in its entirety.

**BACKGROUND**

Plaintiff began working for the City of Nahunta on July 1, 2008. Dkt. No. 30, ¶ 1; Dkt. No. 44-1, ¶ 1. Initially hired as a temporary Water Clerk, Plaintiff later obtained full-time employment as the Police Clerk, Clerk of Municipal Court, and Water Clerk—a position that she has held for the past five years. Dkt. No. 30, ¶ 1; Dkt. No. 44-1, ¶ 1. The City of Nahunta is a corporate body located in the Southern District of Georgia, dkt. no. 1 ("Compl."), ¶ 4; dkt. no. 9, ¶ 4, and Jacobs served as Mayor of the City of Nahunta at all relevant times, see dkt. no. 30, ¶ 2; dkt. no. 44-1, ¶ 2.

**I. Alleged Racial Slurs, Comments, and Other Acts**

Plaintiff, who is Black, alleges that she has experienced a hostile work environment while working for the City of Nahunta, based on her coworkers' use of racial slurs and other offensive comments and acts. Dkt. No. 30, ¶¶ 4, 7; Dkt No. 44-1, ¶¶ 4, 7. Specifically, Plaintiff has testified that her coworkers have

AO 72A
(Rev. 8/82)

made the following comments: (1) Police Chief Robert Johns ("Police Chief Johns") told a joke that used the "N" word in Plaintiff's presence, and Plaintiff protested; (2) Police Chief Johns commented that a Hispanic officer was "not . . . from here" and was "from across the waters"; (3) Police Chief Johns referred to the children of a White woman and Black man as "pickanninnies," which Plaintiff interprets as synonymous with the "N" word; (4) Police Chief Johns made unidentified racial slurs in Plaintiff's presence on other occasions, and Plaintiff protested the same; and (5) Jacobs repeatedly called Plaintiff by the name "Sally," which Plaintiff views as a reference to a historic Black figure, though admitting that Jacobs probably is unaware of the origin of this term. Dkt. No. 31-1 ("Pl.'s Dep. 1"), 24:12-33:2; Dkt. No. 44-2 ("Pl.'s Aff."), ¶ 3.

Plaintiff also has testified that Police Chief Johns neglected to give her the necessary training and professional support to complete her job duties. Pl.'s Dep. 1, 36:7-22. Plaintiff suspects that Police Chief Johns and Jacobs were motivated by racial hostility and the belief that Plaintiff, as a Black person, should not have a clerical job. Id. at 34:3-22. Plaintiff asserts that these officials, as well as the City of Nahunta, took the above actions in an attempt to make Plaintiff quit her job. Id. at 36:11-22, 37:11-15. Plaintiff has

AO 72A
(Rev. 8/82)

testified, however, that she has no direct evidence confirming these suspicions. See, e.g., id. at 34:8-35:5, 36:23-37:5.

## II. Denial of Plaintiff's Applications for Other Positions and Reduction of Her Work Hours

In October 2009, Plaintiff first applied for the full-time Water Clerk position, "but the position was given to a White applicant with less experience and qualifications than [her]." Dkt. No. 31-2 ("Pl.'s Dep. 2"), 77:22-78:2. In November of that year, the City of Nahunta reduced Plaintiff's workload from forty to twenty hours per week. Pl.'s Dep. 1, 37:11-14. While the City of Nahunta blamed the schedule cut-back on budgetary issues, the record reflects that no other employees received a reduction in hours. Id. Plaintiff's hours were eventually restored. Pl.'s Dep. 2, 79:24.

According to Plaintiff, the following events also took place, the timing of which is not clear:

> The [C]ity of Nahunta advertised for a[n] open po[si]tion in the police department. [Plaintiff] had previously performed the work as the [C]lerk in the police department and the [M]unicipal [C]ourt and was familiar with the court procedures and the procedures in using the Georgia Crime Information [C]enter database. The job advertisement said that it was preferred that the applicant have a college degree and relevant job experience. [Plaintiff] ha[s] a college bachelor[']s degree and had experience doing the advertised job. [Plaintiff] applied for the position. [She] was not hired. Instead, a [W]hite applicant who does not have a college degree and did not have experience in a court or in a law enforcement agency was hired. Her beginning pay was more than [Plaintiff] was making at the time[,] and [Plaintiff]

trained her in many of her job duties. [Plaintiff]
was not hired when the [C]ity [C]lerk position was
open. The person who was hired does not have a
college degree[,] and she is [W]hite. . . . [H]er
beggining [sic] pay was substantially more than
[Plaintiff is] paid. Both of these [W]hite employees
are alloweed [sic] to earn overtime, but [Plaintiff
is] specifically prohibited from working overtime.

Pl.'s Aff., ¶ 5.

### III. Plaintiff's Initial Requests for Accommodations

Plaintiff also alleges that she suffers from several
medical conditions and has requested reasonable accommodations
for these conditions in the workplace. Compl., ¶ 21.
Plaintiff's medical conditions include insulin-dependent
diabetes, obstructive sleep apnea, hypothyroidism, major
depression, and attention deficit disorder. Dkt. No. 30, ¶ 16;
Dkt. No. 44-1, ¶ 16. Plaintiff has testified that these
conditions occasionally cause her to suffer from headaches,
lightheadedness, low blood sugar, frequent urination, low
energy, and difficulty concentrating. Pl.'s Dep. 1, 17:15–
22:25. While Plaintiff is able to treat some of these symptoms
by simply eating or drinking something or taking an insulin
shot, others require her to "step away from [her] desk," "take a
break," or, on occasion, arrive late to work. Id. at 18:2–
20:22. Nevertheless, Plaintiff maintains that "none of [her]
health issues stop [her] from doing [her] job"; they "make[] it
harder, but [she] still get[s] it done." Id. at 20:18–19,

23:11-12; see also Pl.'s Dep. 2, 34:18-21 ("[My health] doesn't stop me from going to work and it doesn't stop me from doing the job, I know how to do everything, but it impacts my health and my ability to get there.").

In December 2009, while Plaintiff was operating under the reduced twenty-hour workweek, Plaintiff requested that her hours be changed to accommodate her health conditions. Pl.'s Dep. 2, 79:15-24. Plaintiff has acknowledged that the City of Nahunta responded by making some accommodation in this regard. Id. at 79:22-80:8. According to Plaintiff, in 2010, she spoke with Jacobs and her supervisor about her attention deficit disorder, id. at 55:13-57:25, and her doctors—specifically, her pulmonologist, primary-care physician, vocational rehabilitation specialist, endocrinologist, and possibly psychologist—sent letters notifying the City of Nahunta of her various ailments around that time, Pl.'s dep. 1, 13:23-15:8. Plaintiff again requested a schedule-change accommodation in March 2010—this time, however, it was denied. Pl.'s Dep. 2, 80:9-11. On July 8, 2010, while Plaintiff was out of work for a doctor's appointment, Plaintiff received a notice of suspension without pay. Id. at 80:11-13.

As Plaintiff has since recognized, the City of Nahunta employment Policy 511 provides that "all employees are expected to report for duty at the scheduled time and remain there until

6

the scheduled leaving time." Id. at 48:8-13. Policy 512
further states that "City Hall hours are from 8:00 to 5:00
Monday through Friday," and that "each employee is important to
their department and the city. It is essential that employees
report for work on a punctual basis." Id. at 48:18-49:4.
Plaintiff has confirmed that "if the job requires somebody to be
at that desk from 8:00 to 5:00 to serve the public, that . . .
[is] an essential function of that job." Id. at 38:23-39:3.
Additionally, Plaintiff has acknowledged that if she has to step
away from her desk because she is experiencing symptoms of one
of her medical conditions, one of the two other clerks must
cover her desk; "if that person is working on their own
duties[,] they're having to step away from their own duties to
attend to [her] duties." Id. at 38:11-22.

## IV. Attempts to Terminate Plaintiff

According to Plaintiff, the City of Nahunta notified her
that her employment was terminated in February 2010 and again on
August 13, 2010. See Dkt. No. 30, ¶ 2; Dkt. No. 44-1, ¶ 2;
Pl.'s Aff., ¶ 6. On both occasions, Plaintiff was ultimately
able to keep her job. See Pl.'s Aff., ¶ 6. Plaintiff has
testified that in the August 2010 instance, while she was
working as Police Clerk, Police Chief Johns and Jacobs
recommended her termination, and Jacobs delivered a termination
letter to her. Pl.'s Dep. 1, 11:14-12:4. The City Council then

7

held a hearing on the matter and informed Plaintiff that the reasons for her termination included scheduling, attendance, and tardiness issues.  Id. at 11:22-23, 12:23-14:2.

However, Plaintiff indicated at her deposition that Police Chief Johns and Jacobs had been "unwilling to accept or consider any of the medical documentation request[ing]" accommodations and had neglected to share this documentation with City Council members.  Id. at 14:2-5.  According to Plaintiff, she presented copies of the doctors' letters to the City Council members at the hearing, and the City Council overturned the termination decision.  Id. at 11:14-21, 12:17-22.  Plaintiff has indicated, however, that during the few-week period between her termination and reinstatement at the hearing, she was without pay and benefits.  Pl.'s Dep. 2, 80:24-81:9.

**V.   Plaintiff's Administrative Complaint**

Plaintiff filed a complaint with the Equal Employment Opportunity Commission (the "EEOC") on November 26, 2010, alleging that she had experienced race discrimination, discrimination on the basis of a disability, and retaliation while employed at the City of Nahunta.  Dkt. No. 30, Ex. A ("EEOC Compl.").  Plaintiff reported that these offenses took place between February 19, 2010, and August 13, 2010, and she did not mark the box indicating that any of these was a

AO 72A
(Rev. 8/82)

"continuing action." Id. Plaintiff's EEOC complaint stated, in relevant part:

> Since October 2009, I have been subjected to disparate
> treatment from [Police Chief] Johns . . . and [Mayor]
> Jacobs . . . regarding, but not limited to: promotion,
> raises, reduced hours, racial slurs, suspension, and
> my disability. . . . . In October 2009, I applied for
> the position of Water Clerk, but the position was
> given to a White applicant with less experience and
> qualification than [me]. In November 2009, my hours
> were reduced . . . . [, and] I was the only employee
> whose hours were reduced. On February 19, 2010, Mayor
> Jacobs brought me before the City Council for
> termination, which was not approved. [Police] Chief
> Johns and Mayor Jacobs have used racial slurs such as
> calling me "Sally" and using the "N" word in jokes.
> In December 2009, due to my disability, I requested a
> reasonable accommodation that my work hours be
> changed, which was denied. In March 2010, I again
> requested a reasonable accommodation for a schedule
> change, which was denied. On July 8, 2010, while out
> on a doctor's appointment, I received a notice of
> suspension without pay. On August 13, 2010, I was
> discharged.

Id. On August 21, 2013, the EEOC issued a notice informing

Plaintiff of her right to sue on these grounds. Dkt. No. 1, Ex.

A.

## VI. Events Following Plaintiff's Administrative Action

Jacobs delivered a letter to Plaintiff advising her that

her employment would be terminated as of January 19, 2011,

because she had filed a discrimination action against the City

of Nahunta. Dkt. No. 30, ¶ 14; Dkt. No. 44-1, ¶ 14; see also

Pl.'s Aff., ¶ 6. Plaintiff, however, was not in fact

terminated. Dkt. No. 30, ¶ 14; Dkt. No. 44-1, ¶ 14. Rather,

the Mayor Pro Tem and City Council intervened, allowing her to keep her job without losing any pay or benefits. Pl.'s Dep. 2, 19:23-20:4, 26:11-20. According to Plaintiff, however, the incident caused her to incur legal fees and suffer from stress, anxiety, and loss of sleep. Pl.'s Aff., ¶ 6.

Plaintiff has testified that in that same year, her doctor submitted a written request that she be given a reasonable accommodation of a flexible start time based on her medical conditions. Pl.'s Dep. 2, 35:3-37:9. According to Plaintiff, she gave copies of her doctor's letter to City Council members and let them read it, and she was granted the accommodation. Id. at 37:2-18. When Plaintiff asked her supervisor for a flexible start time in 2012, however, she was told, "We need you here from 8:00 to 5:00." Id. at 37:19-38:6.

Plaintiff also related at her deposition that the doctors' letters that she had previously submitted in 2010 referenced her attention deficit disorder, and that she made verbal requests for a reasonable accommodation based on her attention deficit disorder—all of which were rejected—in 2011, 2012, 2013, and 2014. Id. at 55:9-58:20.

## VI. Plaintiff's Causes of Action

Plaintiff filed a Complaint against the City of Nahunta, as well as Jacobs in his official and individual capacities, in this Court on November 18, 2013. See Compl. The Complaint

AO 72A
(Rev. 8/82)

purports to seek relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"); the Americans with Disabilities Act, 42 U.S.C. §§ 12101-13 (the "ADA"); and Georgia law. Id. at ¶ 1. As to her Title VII claims, Plaintiff generally alleges that as an employee of the City of Nahunta, she has experienced "a hostile work environment which included the use of racial slurs and disrespectful comments" by Jacobs and other employees; "discriminat[ion] against [her] due to her race"; and "acts of retaliation against [her]" such as Jacobs' letter terminating her employment on January 19, 2011, based on her EEOC activity. Id. at ¶¶ 9-16. With regard to her ADA claims, Plaintiff asserts only that she "suffers with a medical condition which has sometimes interfered with her ability to perform job duties," and that the City of Nahunta has maliciously, intentionally, or recklessly "failed and refused to make reasonable accommodations for [her] medical condition." Id. at ¶¶ 21-25. Plaintiff maintains that Defendants' alleged actions have caused her "to suffer mentally and physically from anger, humiliation, frustration, . . . loss of dignity," and "emotional distress." Id. at ¶¶ 20, 23. Plaintiff seeks to recover general and punitive damages, as well as attorney's fees. Id. at ¶¶ B, D.

## VII. Events Following Plaintiff's Filing of Suit

In May 2014, Plaintiff received a "Final Warning" regarding certain inappropriate comments that she had made, including comments about her attention deficit disorder. Dkt. No. 45, Ex. B. The Final Warning informed Plaintiff that the City of Nahunta "ha[d] never received any request by [her] for a reasonable accommodation of [her attention deficit disorder] . . . . [and] ha[d] never received any documentation to evidence [her] diagnosis . . . in order to determine if such constitutes a disability." Id. The Final Warning instructed Plaintiff that "if [she] would like to make a request for accommodation, the City need[ed] to know . . . in writing" her responses to specific inquiries set forth therein. Id. Plaintiff has testified that she never complied with the request for this information in writing, explaining that the City of Nahunta had already received this information in writing and that repeating the same would have been "an exercise in futility." Pl.'s Dep. 2, 58:8-62:8.

Additionally, Plaintiff has submitted affidavit testimony as follows:

> Since I have brought the present lawsuit[] against the City of Nahunta, the [c]ity has installed video surveillance equipment which is focused on the desk area to which I am assigned. The other clerical employees do not have cameras over their desks. The city has used what is supposedly depicted on the camera as the basis for criticisms of my work. White

AO 72A
(Rev. 8/82)

employees are allowed to use their cell phones while on duty[,] but[] I have been specifically prohibited from talking[]on my phone in [C]ity [H]all. The cell phone policy and other policies are not enforced equally.

Pl.'s Aff., ¶ 6.

## DISCUSSION

Jacobs now moves to dismiss Plaintiff's claims against him, dkt. no. 33, and both Defendants move for summary judgment in their favor on all claims, dkt. no. 29. Plaintiff also moves to strike Jacobs' Answer to the Complaint, and for the entry of a default judgment against him. Dkt. No. 35. The Court addresses the parties' arguments as to each of these motions in turn.

## I. Jacobs' Motion to Dismiss (Dkt. No. 33)

Jacobs urges the Court to dismiss Plaintiff's claims against him, because he "is an individual who is not capable of being sued under either Title VII . . . [or] the ADA." Dkt. No. 33-1, p. 1. He also contends that the Court should decline to exercise pendant jurisdiction over any remaining state-law claim. Id. at p. 3. Plaintiff counters this Motion by arguing that Jacobs is subject to suit under Title VII and the ADA, on the basis that he "personally carried out" many of the allegedly wrongful acts. Dkt. No. 38, p. 1.

### A. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires that a plaintiff's complaint contain "a short and plain statement of

the claim showing that the pleader is entitled to relief."
Accordingly, a responding party may move to dismiss the
complaint based on a "failure to state a claim upon which relief
can be granted." Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"). A
Rule 12(b)(6) motion thus challenges the legal sufficiency of
the complaint in setting forth a claim to relief. See Fed. R.
Civ. P. 12(b)(6).

In evaluating a Rule 12(b)(6) motion, a court must "accept
as true the facts as set forth in the complaint and draw all
reasonable inferences in the plaintiff's favor." Randall v.
Scott, 610 F.3d 701, 705 (11th Cir. 2010). While a complaint
need not contain detailed factual allegations, it "must contain
sufficient factual matter, accepted as true, to 'state a claim
to relief that is plausible on its face.'" Ashcroft v. Iqbal,
556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550
U.S. 544, 570 (2007)) (interpreting Fed. R. Civ. P. 8(a)(2)).
To be plausible on its face, a complaint must set forth enough
facts to "allow[] the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged." Id.

A plaintiff, therefore, must plead more than mere labels
and conclusions, and a formulaic recitation of the elements of a
particular cause of action does not suffice. Twombly, 550 U.S.
at 555. Rather, at a minimum, a complaint should "contain
either direct or inferential allegations respecting all the

material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

## B. Plaintiff's Claims Against Jacobs

Title VII and the ADA provide relief against an employer, not an individual employee whose actions allegedly constituted violations of these acts. Hinson v. Clinch Cty., Ga. Bd. of Educ., 231 F.3d 821, 827 (11th Cir. 2000) (quoting Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991)) (Title VII); Pritchard v. S. Co. Servs., 102 F.3d 1118, 1119 n.2 (11th Cir. 1996) (citing Mason v. Stallings, 82 F.3d 1007, 1009 (11th Cir. 1996)) (ADA). Accordingly, in an action under Title VII or the ADA, the only proper individual defendant is a supervisory employee in his capacity as an agent of the employer. Hinson, 231 F.3d at 827 (citing Busby, 931 F.2d at 772); see also Pritchard, 102 F.3d at 1119 n.2; Busby, 931 F.2d at 772 ("[C]laims must be made against the municipal officer in his official capacity, not in his individual capacity." (citing Harvey v. Blake, 913 F.2d 226, 227-28 (5th Cir. 1990))).

In the case at bar, Plaintiff's remedy for any discrimination or retaliation that she may have suffered lies against the City of Nahunta and Jacobs in his official capacity

AO 72A
(Rev. 8/82)

as its Mayor. While Plaintiff emphasizes Jacobs' personal involvement in carrying out the allegedly unlawful acts, dkt. no. 38, p. 1, precedent makes clear that such involvement is grounds for bringing suit against him in his official capacity alone—not in his individual capacity. Thus, Jacobs' Motion is **GRANTED** insofar as it seeks dismissal of Plaintiff's Title VII and ADA claims against him individually. However, as to the claims against him in his official capacity, his arguments for dismissal on this basis are without merit, and this portion of his Motion is **DENIED**. As there is no reason to decline exercising pendant jurisdiction over a state-law claim in these circumstances, Jacobs' Motion in this regard is likewise **DENIED**.

## II. Defendants' Motion for Summary Judgment (Dkt. No. 29)

Defendants initially request that the Court, in ruling on their dispositive Motion, disregard Plaintiff's allegations regarding (1) her nonselection for the police-department and City Clerk positions; (2) the increased surveillance of her desk area; (3) the restrictions on her cell-phone use, dkt. no. 45, pp. 1-2; and (4) the denial of her request for a flexible start time in 2012, dkt. no. 29-1, p. 13. Defendants reason that these allegations are time barred, as they were not included in the EEOC charge and the first three of these also were not mentioned in the Complaint. See Dkt. No. 29-1, p. 13; Dkt. No. 45, p. 2. Thus focusing on only Plaintiff's remaining

allegations, Defendants maintain that they are entitled to judgment in their favor on Plaintiff's Title VII race discrimination and retaliation claims, ADA claims, and punitive-damages claims. Dkt. No. 29-1, pp. 7-14, 16-17. While not directly responding to Defendants' arguments that certain allegations are time barred, Plaintiff nevertheless relies on these allegations in arguing that Defendants are not entitled to summary judgment on her claims for race discrimination and retaliation under Title VII, as well as her claims for discrimination under the ADA. Dkt. No. 44, pp. 6-10.[1]

---

[1] Defendants also argue the following: (1) that Plaintiff cannot sustain a Title VII claim based on a hostile work environment; (2) that qualified immunity protects Jacobs from liability in his individual capacity; (3) that Plaintiff fails to make out a claim for intentional infliction of emotional distress under Georgia law; and (4) that Plaintiff failed to provide ante litem notice to the City of Nahunta prior to filing suit. Dkt. No. 29-1, pp. 10-12, 14-16. The Court need not address these contentions for the following reasons: Plaintiff has abandoned any Title VII hostile work environment claim by not addressing it in her Response to Defendants' Motion, see dkt. no. 44. See Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp., 10 F.3d 1563, 1568 (11th Cir. 1994) (determining that the district court correctly deemed abandoned a claim alleged in the complaint but not raised in opposition to summary judgment). As to Defendants' second argument, qualified immunity, the Court determined supra that Plaintiff's Title VII and ADA claims against Jacobs individually are subject to dismissal. To the extent that Defendants advocate qualified immunity as a defense to a state-law claim against Jacobs individually, this argument—as well as Defendants' third and fourth arguments—are moot, because Plaintiff has similarly abandoned any state-law claim by not mentioning it in her Response, see dkt. no. 44. See id. While it is unclear whether Defendants' final argument concerning ante litem notice relates to Plaintiff's Title VII and ADA claims as well, any argument to this effect would be futile because Plaintiff was not required to give the City of Nahunta such notice for these claims. Armour v. Davidson, 416 S.E.2d 92, 93 (Ga. Ct. App. 1992) (citing City of Atlanta v. J.A. Jones Constr. Co., 392 S.E.2d 564 (Ga. Ct. App. 1990), rev'd on other grounds, 398 S.E.2d 369 (Ga. 1990)).

## A. Standard of Review

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute over such a fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and

AO 72A
(Rev. 8/82)

present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

The nonmovant may satisfy this burden in two ways: First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. Where the nonmovant attempts to carry this burden instead with nothing more "than a repetition of his conclusional allegations, summary judgment for the defendants [is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981) (citing Fed. R. Civ. P. 56(e)).

**B. Evidence Considered**

An action for discrimination in violation of Title VII may not be brought "unless the alleged discrimination has been made the subject of a timely-filed EEOC charge." Alexander v. Fulton Cty., 207 F.3d 1303, 1332 (11th Cir. 2000) (citing 42 U.S.C. § 2000e-5), overruled on other grounds by Manders v. Lee, 338 F.3d

AO 72A
(Rev. 8/82)

1304, 1328 n.52 (11th Cir. 2003). According to EEOC
regulations, a charge must set forth, among other things, "[a]
clear and concise statement of the facts, including pertinent
dates, constituting the alleged unlawful employment practices."
Id. (alteration in original) (quoting 29 C.F.R. §
1601.12(a)(3)). The purpose of this requirement is to give the
EEOC the first opportunity to investigate the alleged
discriminatory practices so that it may attempt to help resolve
the situation if it sees fit. Gregory v. Ga. Dep't of Human
Res., 355 F.3d 1277, 1279 (11th Cir. 2004) (citing Evans v. U.S.
Pipe & Foundry Co., 696 F.2d 925, 929 (11th Cir. 1983)).

A subsequent judicial complaint is "limited by the scope of
the EEOC investigation which can reasonably be expected to grow
out of the charge of discrimination." Alexander, 207 F.3d at
1332 (quoting Mulhall v. Advance Sec., Inc., 19 F.3d 586, 589
n.8 (11th Cir. 1994)). As such, the allegations in the
complaint "may encompass any kind of discrimination like or
related to allegations contained in the charge and growing out
of such allegation during the pendency of the case before the
[EEOC]." Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466
(5th Cir. 1970) (quoting King v. Ga. Power Co., 295 F. Supp.
943, 947 (N.D. Ga. 1968)). The complaint may also "amplify,
clarify, or more clearly focus" the allegations in the EEOC
complaint, "but allegations of new acts of discrimination are

inappropriate." Gregory, 355 F.3d at 1279-80 (citing Wu v. Thomas, 863 F.2d 1543, 1548 (11th Cir. 1989)). Still, courts are "reluctant to allow procedural technicalities to bar claims," and "the scope of an EEOC complaint should not be strictly interpreted." Id. at 1280 (quoting Sanchez, 431 F.2d at 460-61, 465).

In addition, "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge." Thomas v. Miami Dade Pub. Health Tr., 369 F. App'x 19, 23 (11th Cir. 2010) (first quoting Gupta v. E. Tex. St. Univ., 654 F.2d 411, 414 (5th Cir. 1981); then citing Baker v. Buckeye Cellulose Corp., 856 F.2d 167, 168-69 (11th Cir. 1988)). Rather, "the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court." Id. (first quoting Gupta, 654 F.2d at 414; then citing Baker, 856 F.2d at 168-69).

Here, Plaintiff's allegations regarding the denial of her applications for the police-department and City Clerk positions are sufficiently related to the allegations in her EEOC complaint as to satisfy the exhaustion requirement. In her November 26, 2010, EEOC complaint, Plaintiff stated that she "applied for the position of Water Clerk, but the position was given to a White applicant with less experience and

qualification than [her]." EEOC Compl. Plaintiff's affidavit now indicates that she was denied open positions in the police department and as City Clerk, in favor of White applicants who do not have college degrees and had less experience. Pl.'s Aff., ¶ 5.

While the affidavit does not detail when, exactly, these denials took place, the inference that the Court must draw, at this stage, is that Plaintiff was passed over for these positions sometime before receiving the EEOC notice of right to sue on August 21, 2013. See Johnson, 234 F.3d at 507 (court must draw reasonable inference in the nonmovant's favor on summary judgment). This inference is reasonable, as Plaintiff was no longer working for the police department but was the Water Clerk for much—if not all—of the time that her charge was pending before the EEOC from November 2010 to August 2013. See Dkt. No. 30, ¶ 1; Dkt. No. 44-1, ¶ 1. While Plaintiff's Complaint thereafter filed in this Court is silent as to her applications for these positions, it also does not mention the Water Clerk position and, instead, relies on more general allegations regarding discriminatory treatment and her EEOC filing. See Dkt. No. 1, ¶¶ 9-20. Moreover, Plaintiff's affidavit discusses her nonselection for these positions separately from, and prior to, the allegedly retaliatory events

occurring after the filing of this action. See Pl.'s Aff., ¶¶ 5-6.

Similarly, Plaintiff's allegation of being denied a request for a flexible start time in 2012 grew out of the facts set forth in her administrative charge, while that charge was pending. The EEOC complaint indicated that Plaintiff "requested a reasonable accommodation that [her] work hours be changed" in December 2009 and March 2010, and that both requests were denied. EEOC Compl. Plaintiff added at her deposition that she was again denied a request for a flexible start time in 2012. Pl.'s Dep. 2, 37:19-38:6. The alleged denial in 2012 is the same type of act described in the 2010 EEOC charge, and it occurred, if at all, before the EEOC notified Plaintiff of her right to sue in August 2013.[2]

---

[2] Defendants make much of the fact that Plaintiff, in filling out her EEOC complaint, did not check the box labeled, "continuing action" with respect to any of the allegedly discriminatory conduct of Defendants. Dkt. No. 45, p. 4. The Court declines to interpret Plaintiff's failure to mark this box as limiting her EEOC charge to the then-isolated instances of nonhiring and failing to accommodate, as doing so would be contrary to the Court's obligation not to strictly construe the administrative charge. See Sanchez, 431 F.2d at 462-64 ("We turn first to [the defendant's] contention that [the plaintiff] is irrevocably bound by the fact that she checked only the box labeled 'sex' when she executed her original charge of discrimination. We reject this contention because we conclude that her failure to check the box labeled 'national origin' was a mere 'technical defect or omission.'").

Because it appears that Plaintiff's nonselection for the police-department and City Clerk positions, as well as her unsuccessful request for a flexible start time, were before the EEOC during its investigation into Plaintiff's charge, it is reasonable to assume that the EEOC considered these events when looking into her allegations of being passed over for open positions and denied accommodations.  Accordingly, Plaintiff exhausted her administrative remedies as to these allegations, and they are now properly before the Court.

Finally, as to Plaintiff's allegations that Defendants have subjected her to increased surveillance and cell-phone restrictions, Plaintiff need not have filed EEOC charges on these grounds.  These allegations were neither in Plaintiff's EEOC charge in November 2010 nor the Complaint filed in this Court in November 2013, see EEOC compl.; compl.; however, Plaintiff's affidavit and deposition testimony confirm that these acts began in 2014, after her filing of the present action, see Pl.'s aff., ¶ 1; Pl.'s dep. 2, 15:9-16.  As Plaintiff need not have exhausted her administrative remedies for retaliatory acts growing out of her pursuit of the discrimination claims properly before the Court, the Court has jurisdiction over Plaintiff's retaliation claims on these

AO 72A
(Rev. 8/82)

grounds.[3] Having determined that Defendants' objections to Plaintiff's factual allegations are without merit, the Court will consider these allegations, and any evidence in support thereof, in ruling on the instant Motion.

### C. Plaintiff's Title VII Race Discrimination Claims

Title VII prohibits employment discrimination on the basis of color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Under McDonnell Douglas Corp. v. Green, the plaintiff in a Title VII case bears the initial burden of establishing a prima facie case of race discrimination. 411 U.S. 792, 802 (1973). To do so, a plaintiff must show that she (1) belongs to a racial minority; (2) was subjected to an adverse employment action; (3) was treated less favorably than similarly situated, nonminority employees; and (4) was qualified for the job. Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) (citing McDonnell Douglas Corp., 411 U.S. at 802; Coutu v. Martin Cty. Bd. of Cty. Com'rs, 47 F.3d 1068, 1073 (11th Cir. 1995); and Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1060 (11th Cir. 1994)). This burden is not a heavy one, as the plaintiff need

---

[3] While this portion of Plaintiff's affidavit appears to relate to Defendants' retaliatory conduct during this litigation, Plaintiff's discussion of the restrictions on her cell-phone use also includes that Defendants have not similarly enforced the cell-phone policy against White employees. See Pl.'s Aff., ¶ 6. Plaintiff—to the extent that she seeks to do so—cannot pursue a race discrimination claim on this basis, as Defendants' allegedly unequal enforcement of the cell-phone policy took place after the filing of this case and thus has not been subject to investigation by the EEOC.

AO 72A
(Rev. 8/82)

only put forth facts that permit an inference of discrimination under the McDonnell Douglas framework. Id. (citing Williams v. Ford Motor Co., 14 F.3d 1305, 1308 (8th Cir. 1994)).

A plaintiff is subjected to an adverse employment action when she suffers a "serious and material change in the terms, conditions, or privileges of employment." Rainey v. Holder, 412 F. App'x. 235, 238 (11th Cir. 2011) (quoting Davis v. Town of Lake Park, 245 F.3d 1232, 1238-39 (11th Cir. 2001)). As to the comparison between the plaintiff's treatment and that of nonminority employees, "the plaintiff must show that [s]he and the employees are similarly situated in all relevant respects." Holifield, 115 F.3d at 1562 (citing Smith v. Stratus Computer, Inc., 40 F.3d 11, 17 (1st Cir. 1994); Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992); and Smith v. Monsanto Chem. Co., 770 F.2d 719, 723 (8th Cir. 1985)). "The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004) (citing Silvera v. Orange Cty. Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001)).

"If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." Holifield, 115 F.3d at 1562. Should the plaintiff succeed in establishing a

AO 72A
(Rev. 8/82)

prima facie case, the burden shifts then to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas Corp., 411 U.S. at 802. If the defendant is able to do so, the plaintiff "must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981) (citing McDonnell Douglas Corp., 411 U.S. at 804).

It is undisputed that Plaintiff, as a Black female, belongs to a racial minority. Dkt. No. 30, ¶ 4; Dkt No. 44-1, ¶ 4. Plaintiff also has put forth evidence that she was subjected to an adverse job action when she applied for available Water Clerk, police-department, and City Clerk positions, for which she was qualified but was rejected in favor of less qualified, less experienced White applicants, Pl.'s dep. 2, 77:22-78:2 (Water Clerk); Pl.'s aff., ¶ 5 (police department and City Clerk). See Tex. Dep't of Cmty. Affairs, 450 U.S. at 253 & n.6 (nonselection for position as an adverse employment action). With regard to the latter two positions in particular, the evidence shows that the job advertisement for the police department preferred an applicant with a college degree and relevant experience; that Plaintiff is a college graduate and

AO 72A
(Rev. 8/82)

had experience with the procedures and databases of the police department and Municipal Court; and that the applicants hired for these positions do not have college degrees and had no relevant law-enforcement or court experience. Pl.'s Aff., ¶ 5. As Plaintiff was similarly—and perhaps more—qualified than the nonminority applicants for these positions, Defendants' decisions not to hire her for the same could reasonably support an inference of discrimination on the basis of her race.

Defendants do not attempt to offer any legitimate, nondiscriminatory reason for rejecting Plaintiff, or preferring someone else, for these positions. Accordingly, Plaintiff's prima facie case of discrimination is sufficient to withstand summary judgment. Defendants' Motion as to Plaintiff's Title VII race discrimination claims is, therefore, **DENIED.**

### D. **Plaintiff's Title VII Retaliation Claims**

Title VII makes it unlawful for an employer to retaliate against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [42 U.S.C. § 2000e-3(a)]." Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 956 (11th Cir. 1997) (quoting 42 U.S.C. § 2000e-3(a)). To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in

statutorily protected activity, (2) she suffered a materially adverse action, and (3) there was a causal link between these two events. Butler v. Ala. Dep't of Transp., 536 F.3d 1209, 1212-13 (11th Cir. 2008). Once a plaintiff makes this showing, the burden shifts to the defendant-employer "to articulate a legitimate, nondiscriminatory reason" for the adverse employment action. Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1174 (11th Cir. 2010) (citing Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir. 2002)). If the defendant is able to do so, then the burden shifts back to the plaintiff to offer evidence that the defendant's proffered reason "is a pretext for illegal discrimination." Id. (quoting Wilson, 376 F.3d at 1087).

1. Statutorily Protected Activity (Element One)

"Statutorily protected expression includes internal complaints . . . to superiors as well as complaints lodged with the EEOC." Pipkins v. City of Temple Terrace, 267 F.3d 1197, 1201 (11th Cir. 2001) (citing Rollins v. Fla. Dep't of Law Enforcement, 868 F.2d 397, 400 (11th Cir. 1989)). As to EEOC complaints, protected activity includes not only filing the charge but also assisting or participating in an investigation or other related proceeding. Green v. Adm'rs of Tulane Educ. Fund, 284 F.3d 642, 657 (5th Cir. 2002) (citing 42 U.S.C. § 2000e-3(a)). Accordingly, a plaintiff may establish retaliation under Title VII "if she c[an] prove the requisite causal nexus

between [any] of these activities and an adverse employment decision." Pipkins, 267 F.3d at 1201 (citing Rollins, 868 F.2d at 400).

While Plaintiff has submitted affidavit evidence that she protested whenever her coworkers made racial slurs or other offensive comments, see Pl.'s aff., ¶ 3, the record does not reflect that Plaintiff made any complaints of discrimination to her superiors or otherwise engaged in protected activity prior to her EEOC filing. Rather, it was not until Plaintiff filed the EEOC charge on November 26, 2010, see EEOC compl., that she first engaged in protected expression. Her subsequent participation in the EEOC investigation, filing of this case, and litigation of the same likewise are protected under Title VII.

### 2. Materially Adverse Action (Element Two)

To prove a "materially adverse action," a plaintiff must demonstrate that the employer took an action that "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (2006)). Whether an employment action is materially adverse is "a question of fact, although one still subject to the traditional rules governing summary judgment." Hyde, 355 F. App'x at 268 (citing Hinson, 231 F.3d at 830). A

court entertaining this inquiry on summary judgment must view the employment action from "the perspective of a reasonable person in the plaintiff's position," considering the totality of the circumstances. Burlington N. & Santa Fe Ry. Co., 548 U.S. at 69-70. In doing so, an employer's "petty slights, minor annoyances, and simple lack of good manners [do] not create such deterrence" to Title VII's remedial mechanisms as to constitute a materially adverse action. Id. at 68 (citing 2 EEOC 1998 Manual § 8, 8-13).

Plaintiff sustains her burden of demonstrating a materially adverse action at this stage. Plaintiff has produced evidence that after filing her EEOC charge, Jacobs delivered a letter informing her that her employment would be terminated on January 19, 2011, based on her EEOC activity. Dkt. No. 30, ¶ 14; Dkt. No. 44-1, ¶ 14; see also Pl.'s Aff., ¶ 6. While the Mayor Pro Tem and City Council subsequently intervened to permit Plaintiff to keep her job without any loss in pay or benefits, Pl.'s dep. 2, 19:23-20:4, 26:11-20, Plaintiff has affied that the ordeal nevertheless resulted in her incurring legal fees and suffering from stress, anxiety, and loss of sleep, Pl.'s aff., ¶ 6. A reasonable juror could conclude that the financial and emotional burdens of this experience might have dissuaded a reasonable person from making the EEOC charge in the first place.

AO 72A
(Rev. 8/82)

Additionally, Plaintiff has submitted evidence that after filing a Complaint in this Court, the City of Nahunta installed video surveillance equipment over only her desk area and has used the footage to criticize her work. Pl.'s Aff., ¶ 6. Defendants' "increased surveillance" over her, if true, could constitute a material change in the conditions of her employment. See Facts About Retaliation, EEOC, http://www.eeoc.gov/laws/types/facts-retal.cfm (last visited Feb. 16, 2016) (listing "increased surveillance" as an "adverse action" that supports a retaliation claim). The record further reflects that the City of Nahunta officials have strictly enforced its policies relating to cell-phone use and other matters against Plaintiff, while continuing to allow other employees to bend these rules while on duty. Pl.'s Aff., ¶ 6. This departure from the de facto operating procedures and singling out of Plaintiff for harsh treatment could, if proven, reasonably support a finding of a materially adverse action.

### 3. Causal Connection (Element Three)

To establish a causal connection between participation in a protected activity and an adverse employment action, "a plaintiff need only show that the protected activity and the adverse action were not wholly unrelated." Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000) (internal quotation marks omitted) (quoting Clover v. Total Sys.

AO 72A
(Rev. 8/82)

Servs., Inc., 176 F.3d 1346, 1354 (11th Cir. 1999)). To make this showing, a plaintiff must generally establish "that the decision maker was aware of the protected conduct at the time of the adverse employment action." Id. (citing Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993), and Raney v. Vinson Guard Serv., Inc., 120 F.3d 1192, 1197 (11th Cir. 1997)).

Close temporal proximity between protected conduct and an adverse employment action is generally "sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1298 (11th Cir. 2006) (quoting Brungart, 231 F.3d at 799). If the adverse employment action is taken without knowledge of the protected activity, however, there can be no retaliation. Gupta, 212 F.3d at 590; see also Goldsmith, 996 F.2d at 1163 ("At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action.").

Plaintiff offers sufficient evidence to satisfy the causal link requirement of her prima facie case. The record shows that Jacobs delivered a termination letter purporting to terminate Plaintiff's employment in January 2011, and, significantly, citing Plaintiff's discrimination action against the City of Nahunta as the reason for termination. Dkt. No. 30, ¶ 14; Dkt.

AO 72A
(Rev. 8/82)

No. 44-1, ¶ 14; see also Pl.'s Aff., ¶ 6. Defendants do not dispute this fact. See Dkt. No. 29-1, p. 12.

Additionally, Plaintiff offers circumstantial evidence that Defendants' subsequent surveillance and strict enforcement of policies against her were related to her protected activities. Although Plaintiff has not provided exact dates on which the City of Nahunta installed video surveillance equipment above her desk and began strictly monitoring her work and cell-phone use, Plaintiff's affidavit represents that these events have taken place "[s]ince [she] . . . brought the present lawsuit." See Pl.'s Aff., ¶ 6. Construing all reasonable inferences in Plaintiff's favor, as the Court must do at this stage, this evidence suggests that the City of Nahunta took these actions immediately or soon after she filed suit. This close temporal proximity, if proven, could satisfy the causation requirement. Cf. Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006) ("[I]n the absence of any other evidence of causation, a three and one-half month proximity between a protected activity and an adverse employment action is insufficient to create a jury issue on causation." (citing Wascura v. City of South Miami, 257 F.3d 1238, 1248 (11th Cir. 2001))).

As Defendants focus only on Plaintiff's asserted inability to show an adverse employment action in the first place, they do not attempt to justify their allegedly retaliatory conduct. See

AO 72A
(Rev. 8/82)

Dkt. No. 29-1, p. 12.  As a result, Defendants have waived, at this stage, any arguments relating to the legitimate reasons for which they may have taken these actions.  See Herring v. Sec'y, Dept. of Corrs., 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'" (alteration in original) (quoting United States v. Coy, 19 F.3d 629, 632 n.7 (11th Cir. 1994))).

The record before the Court thus indicates that there is at least a genuine issue of material fact as to whether Defendants engaged in retaliatory conduct.  Under these circumstances, summary judgment is inappropriate.  Defendants' Motion is, therefore, **DENIED** as it relates to Plaintiff's retaliation claims.

### E. Plaintiff's ADA Claims

The ADA makes it unlawful for an employer to discriminate "against a qualified individual on the basis of a disability" in any of the "terms, conditions, [or] privileges of employment." 42 U.S.C. § 12112(a).  To establish a prima facie case of discrimination under the ADA, a plaintiff must show that at the time of an adverse employment action, (1) she had a disability; (2) she was a qualified individual; and (3) she was subjected to unlawful discrimination because of her disability.  Mazzeo v. Color Resolutions Int'l, LLC, 746 F.3d 1264, 1268 (11th Cir.

AO 72A
(Rev. 8/82)

2014) (citing <u>Holly v. Clairson Indus., LLC</u>, 492 F.3d 1247,
1255-56 (11th Cir. 2007)). The ADA defines the term
"disability" as follows:

> (A) a physical or mental impairment that
> substantially limits one or more major life
> activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(1). "Major life activities" include
activities such as "caring for oneself, performing manual tasks,
seeing, hearing, eating, sleeping, walking, standing, lifting,
bending, speaking, breathing, learning, reading, concentrating,
thinking, communicating, and working." <u>Id.</u> § 12102(2)(A).

While the statute does not define "substantially limits,"
EEOC regulations clarify that this requirement "is not meant to
be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). It
involves a "comparison of an individual's performance of a major
life activity to the performance of the same major life activity
by most people in the general population." <u>Id.</u> §
1630.2(j)(1)(v). "An impairment need not prevent, or
significantly or severely restrict, the individual from
performing a major life activity in order to be considered
substantially limiting. Nonetheless, not every impairment will
constitute a disability within the meaning of this section."
<u>Id.</u> § 1630.2(j)(1)(ii).

AO 72A
(Rev. 8/82)

In the instant matter, Plaintiff does not appear to contend that she had a disability based on any actual, substantially limiting impairment or record of impairment.  See 42 U.S.C. § 12102(1)(A)-(B).  Indeed, the record does not reflect that Plaintiff's medical conditions substantially limit any major life activities, including her ability to work.  Plaintiff's medical conditions include diabetes, obstructive sleep apnea, hypothyroidism, major depression, and attention deficit disorder.  Dkt. No. 30, ¶ 16; Dkt. No. 44-1, ¶ 16.  Plaintiff related at her deposition that these conditions occasionally cause mild symptoms, such as headaches, low blood sugar, frequent urination, and difficulty concentrating; that she manages these symptoms by eating or drinking something, taking an insulin shot, "step[ping] away from [her] desk," or, every so often, arriving late to work, Pl.'s dep. 1, 17:15-22:25; and that the symptoms "do[]n't stop [her] from going to work and . . . doing the job," Pl.'s dep. 2, 34:18-21; see also Pl.'s dep. 1, 20:18-19, 23:11-12.

Common sense dictates that employees must regularly step away from their desks to use the restrooms, eat, and fulfill other temporary tasks.  Additionally, employers can expect that their employees, from time to time, may feel sick and need to arrive late or even miss work altogether on that day.  Even assuming that tardiness could limit Plaintiff's ability to

AO 72A
(Rev. 8/82)

perform her duties with the City of Nahunta—as attendance and punctuality are essential to her position, see Pl.'s dep. 2, 38:11-39:3, 48:8-49:4—the evidence does not suggest that occasional tardiness would substantially hinder her ability to hold other jobs and thus maintain employment in general. See Murphy v. United Parcel Serv., Inc., 527 U.S. 516, 523 (1999) ("[T]o be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job." (citing 29 C.F.R. § 1630.2(j)(3)(i) (1998))).

Rather, the sole basis upon which Plaintiff rests her contention that she was disabled is that she was "regarded as" having an impairment. See Dkt. No. 44, pp. 7-10; see also 42 U.S.C. § 12102(1)(C). An individual is "regarded as" having an impairment "if the individual is subjected to a prohibited action because of an actual or perceived physical or mental impairment." 29 C.F.R. § 1630.2(l)(1). To meet this standard, a plaintiff must demonstrate that her employer mistakenly believes that either (1) she "has a physical impairment that substantially limits one or more major life activities," or (2) "an actual, nonlimiting impairment substantially limits one or more major life activities." Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999). In both cases, the employer must actually "entertain misperceptions about the individual—it must

AO 72A
(Rev. 8/82)

believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." Id. "These misperceptions often 'resul[t] from stereotypic assumptions not truly indicative of . . . individual ability.'" Id. (alterations in original) (citing 42 U.S.C. § 12101(7)).

Examples of scenarios in which an individual is "regarded as" having a "disability" under the statute are as follows:

> 1) Plaintiff A, a police officer, has a mild form of multiple sclerosis. Even though he is not disabled under the ADA, his employer has learned of the impairment and mistakenly believes that it substantially limits his ability to work. Many of his fellow officers also know of the impairment, and[,] as a consequence, refuse to work with him for fear that he will be an unreliable partner. He is fired.

> 2) Plaintiff B, an office worker, has a mild form of schizophrenia. Even though she is not disabled under the ADA, her employer has learned of the impairment and mistakenly believes that it substantially limits her ability to interact with others. Many of her co-workers also know of the impairment, and[,] as a consequence, believe her to be "crazy." She is unable to interact with her co-workers because of their attitudes and is fired.

Jacques v. DiMarzio, Inc., 200 F. Supp. 2d 151, 167-68 (E.D.N.Y. 2002), aff'd, 386 F.3d 192 (2d Cir. 2004). Both scenarios involve plaintiffs who "are not disabled by their impairments, but are substantially limited 'as a result of the attitudes of others toward [their] impairment[s].'" Id. at 168 (alterations in original) (quoting 29 C.F.R. § 1630.2(l)(2)).

Plaintiff does not point to any evidence suggesting that Defendants mistakenly viewed her medical conditions as substantially limiting. There is no evidence that Defendants misperceived the severity of Plaintiff's symptoms or acted upon stereotypical notions as to the impact that her conditions might have on her performance in the workplace. To the contrary, the evidence now before the Court demonstrates that Defendants were aware of the actual effects of Plaintiff's conditions—including her occasional tardiness—and suspended and attempted to terminate her based on documented instances of the same, and that they harbored no misperceptions whatsoever. See Pl.'s Dep. 1, 11:22-23, 12:23-15:8. As nothing in the record indicates that Defendants entertained any false conceptions about Plaintiff's workplace limitations on account of her medical conditions, Defendants cannot fairly be said to have regarded Plaintiff as disabled.

Thus, the evidence is such that no reasonable juror could find that Plaintiff had any medical condition coming within the statutory definition of a "disability." Defendants, therefore, cannot be held liable under the ADA for refusing to accommodate or taking any adverse action on the basis of these conditions. Defendants' Motion is thus **GRANTED** as it relates to Plaintiff's ADA claims.

AO 72A
(Rev. 8/82)

## F. Punitive Damages

A plaintiff may recover punitive damages for Title VII violations in certain circumstances. 42 U.S.C. § 1981a(b)(1). However, punitive damages are unavailable in suits against governments, government agencies, and political subdivisions. Id. As a suit against a government actor in his official capacity is the functional equivalent of a suit against the governmental entity itself, such a defendant cannot be subject to a punitive-damages award. Alexander, 207 F.3d at 1350 n.14.

To the extent that Plaintiff seeks punitive damages on account of the alleged Title VII violations, Plaintiff cannot succeed in proving at trial that she entitled to recover the same. It is undisputed that the City of Nahunta is a corporate body in Georgia, compl., ¶ 4; dkt. no. 9, ¶ 4, and that Jacobs held public office in the City of Nahunta at all relevant times, see dkt. no. 30, ¶ 2; dkt. no. 44-1, ¶ 2. Even assuming, arguendo, that Plaintiff could establish that these Defendants violated Title VII, Plaintiff could not recover punitive damages on the basis of those violations. This portion of Defendants' Motion is **GRANTED**.

### III. **Plaintiff's Motion to Strike and Motion for Entry of Default Judgment (Dkt. No. 35)**

Plaintiff moves the Court to strike Jacobs' Answer filed in this case, and to enter a default judgment as to his liability, based on his alleged failure to appear at a discovery deposition. Dkt. No. 35, p. 1. In support, Plaintiff submits an affidavit of her counsel attesting that Jacobs was scheduled to give a deposition on June 16, 2015, and that he did not appear at the designated place for the deposition on that day. Id. at p. 3. According to Plaintiff's counsel, Defendants' counsel stated that he had previously notified Jacobs "of the time and place of the taking of his [d]eposition," and made several calls and other efforts to locate him on that day. Id.

Jacobs urges the Court to deny Plaintiff's Motion in its entirety, arguing, in part, that Plaintiff and her counsel fail to put forth evidence of a good-faith attempt to resolve this issue without Court intervention. Dkt. No. 36, p. 4. Jacobs further emphasizes that the striking of a pleading and entry of a default judgment are extraordinary and drastic sanctions. Id. at p. 3. Jacobs asserts that the circumstances in this case do not warrant such sanctions, for the following reasons: (1) the deposition was a rescheduling by agreement of counsel after the parties were unable to complete the depositions of various witnesses on an earlier date; (2) there was no Court order or

AO 72A
(Rev. 8/82)

formal notice of deposition by Plaintiff requiring his attendance at the rescheduled deposition; (3) there was no exact time at which Jacobs' deposition was set to start on that day; (4) Defendants' counsel explained to Plaintiff's counsel that Jacobs is the caregiver for his elderly mother and had notified his counsel that he would be unable to attend the rescheduled deposition in the event that he could not find a replacement caregiver for that day; and (5) Plaintiff's counsel never attempted to reschedule the deposition or otherwise resolve this issue before filing the instant Motion. Id. at pp. 1–3.[4]

Pursuant to Federal Rule of Civil Procedure 37(d)(1)(A)(i), a court, on a motion made by a party, may order sanctions if a party "fails, after being served with proper notice, to appear for that person's deposition." A party moving for sanctions on this basis "must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action." Fed. R. Civ. P. 37(d)(1)(B). Sanctions available in this context include, among other things, "striking pleadings in whole or in part" and "rendering a default judgment

---

[4] Jacobs also states in his Response that he "requests that he be awarded reasonable attorney's fees in having to respond to this Motion." Dkt. No. 36, p. 4. Jacobs' request for attorney's fees is not properly before the Court, see Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."), and he does not demonstrate that he is entitled to such an award in any event.

AO 72A
(Rev. 8/82)

against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A), (d)(3).

A court has broad discretion in ruling on motions for these types of sanctions. See Resolution Tr. Corp. v. Youngblood, 807 F. Supp. 765, 769 (N.D. Ga. 1992). Striking a pleading is a harsh sanction and is "not generally favored." Id. Similarly, the "ultimate sanction" of a default judgment should be reserved for situations where "a lesser sanction would not punish and deter the abusive conduct while allowing a full and fair trial on the merits." Chemtall Inc. v. Citi-Chem, Inc., 992 F. Supp. 1390, 1408-09 (S.D. Ga. 1998).

Plaintiff's Motion appears to be premature, as there is no indication that she attempted to confer with Jacobs and his counsel prior to bringing this discovery issue to the Court. Additionally, Plaintiff fails to show that the requested sanctions are appropriate here. Pretermitting the issue of whether Jacobs ever received "proper notice" of his rescheduled deposition, see Fed. R. Civ. P. 37(d)(1)(A)(i), his failure to appear at the same was not without justification. Jacobs had attended the originally scheduled deposition, and, as relayed to Plaintiff's counsel, Jacobs was unable to participate on the rescheduled date due to family obligations. Dkt. No. 36, pp. 2-3. While perhaps Plaintiff's counsel was not given advance notice of Jacobs' potential nonattendance, Plaintiff suffered no

AO 72A
(Rev. 8/82)

prejudice—as other witnesses were deposed on the rescheduled date—and Plaintiff made no further attempt to reschedule his deposition after learning this fact.  See id.

Because severe sanctions are not warranted on these facts, Plaintiff's Motion in this regard is **DENIED**.  Should Plaintiff seek to depose this Defendant prior to trial, she must file a proper motion requesting leave of court to do so.

## CONCLUSION

Based on the foregoing, Jacobs' Motion to Dismiss (dkt. no. 33) is **GRANTED in part** and **DENIED in part**: it is **GRANTED** as to Plaintiff's Title VII and ADA claims against Jacobs in his individual capacity.  However, Jacobs' Motion is **DENIED** to the extent that Plaintiff makes these claims against him in his official capacity.

Defendants' Motion for Summary Judgment (dkt. no. 29) is also **GRANTED in part** and **DENIED in part**: it is **GRANTED** as to Plaintiff's ADA and punitive-damages claims, and the Clerk of Court is **DIRECTED** to enter the appropriate judgment as to these claims.  Defendants' Motion is **DENIED** with respect to Plaintiff's claims of race discrimination and retaliation claims under Title VII, and these claims remain pending.

Finally, Plaintiff's Motion to Strike and Motion for Default Judgment (dkt. no. 35) is **DENIED** in its entirety.

AO 72A
(Rev. 8/82)

**SO ORDERED**, this 14TH day of March, 2016.


LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)